IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-529-FL

| | | |
|---|---|---|
| BEAR INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| PENN NATIONAL MUTUAL | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on cross-motions for summary judgment (DE 62, 73). The issues raised are ripe for ruling. For the following reasons, plaintiff's motion is denied and defendant's motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this action October 8, 2019, in Superior Court of Cumberland County, North Carolina, asserting a single claim for breach of contract arising from defendant's failure to pay for damages sustained to plaintiff's commercial property as a result of Hurricane Matthew. Defendant removed the action to this court November 21, 2019, on the basis of diversity jurisdiction under 28 U.S.C. § 1332, defendant timely filed answer, and discovery proceeded under the terms of the court's January 23, 2020, case management order. That order was amended September 24, 2020, with consent of both parties following withdrawal and replacement of plaintiff's counsel.

Thereafter, the court granted plaintiff's consent motion to stay the case pending appraisal of the property at issue. The parties filed March 15, 2022, a status report indicating that the appraisal process had concluded. The court lifted the stay and entered amended case management order.

On September 16, 2022, plaintiff moved to amend the complaint to add: 1) Economy of Cumberland Self Storage, LLC, ("Economy") as an additional plaintiff, 2) a second breach of contract claim for failure to pay for damage to the property arising from Hurricane Florence, 3) a claim for bad faith under North Carolina common law, 4) a claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), see N.C. Gen. Stat. §§ 58-63-15, 75-1.1, and 5) additional factual allegations. Such amendment was opposed by defendant.

A few weeks later, plaintiff moved to supplement its motion to amend, filing a new proposed amended complaint that removed Economy as a plaintiff, removed the second contract claim, and added additional factual allegations. Defendant opposed the motion to amend and moved to strike such motion to supplement inter alia for failure to comply with the deadlines enumerated in the Federal Rules of Civil Procedure, the court's case management order, and this court's local rules. The parties jointly moved to continue the dispositive motions deadline in light of issues pending before the court, and this motion to continue was granted.

The court held hearing on motions then pending January 27, 2023, at which the court granted plaintiff's motions to amend and denied defendant's motion to strike. Plaintiff filed amended complaint January 31, 2023. The parties proposed limited additional discovery, and the court ordered deadlines for such discovery and amended deadlines for dispositive motions March 2, 2023.

2

Thereafter, defendant filed partial motion for judgment on the pleadings, seeking dismissal of plaintiff's newly-added claims. The court granted the motion by order entered November 8, 2023, with respect to plaintiff's UDTPA claim arising from damages sustained as a result of Hurricane Matthew and its bad faith claim but denied the motion with respect to plaintiff's UDTPA claim arising from damages sustained as a result of Hurricane Florence and its fraud claim.

The instant motions followed April 1, 2024. Plaintiff seeks summary judgment in its favor with respect to each of its three claims. Defendant likewise moves for summary judgment, seeking dismissal all of plaintiff's claims.

Plaintiff relies in support of its motion upon: 1) eight affidavits by persons involved in the underlying coverage dispute and the resumes of those persons; 2) engineering reports, inspections, and appraisals of the damaged commercial property; 3) correspondence between the parties and between persons involved with the claim and coverage dispute; 4) two notices of property loss; 5) an report by its expert witness, Donald L. Dinsmore ("Dinsmore"), and documents relied upon in that report; and 6) depositions of Neil R. Baer, P.E. ("Baer"); Dereck L. Rabun, P.E. ("Rabun"); Craig Graham ("Graham"); Eric Long ("Long"); Boyd Wright, ("Wright"); defendant, by and through Brian Claude Woods ("Woods"), under Federal Rule of Civil Procedure 30(B)(6); William Hamrick Jr., ("Hamrick"); and Michael M. Gibson ("Gibson").[1] Defendant relies in support of its motion upon some of the same documents, and: 1) plaintiff's articles of incorporation and certain warranty deeds; 2) two depositions of James Smith, Sr. ("Smith"), and depositions of Jeffrey Raines ("Raines"), Lewis O'Leary, Jr., ("O'Leary"), Dinsmore, Kevin Correia ("Correia"), and Ricky Hall ("Hall"); 3) additional correspondence between the parties and between persons

---

[1] An appendix comprising an index of names, describing each individual or entity's role and affiliation, is attached hereto.

involved with the claim and coverage dispute; 4) additional estimates and invoices; 5) the relevant insurance policies; and 6) the appraisal award.

Plaintiff submitted with its opposition brief an affidavit by Smith addressing its interest in the property. Defendant resubmitted some evidence already relied upon the parties, a claims file diary entry, and an affidavit by its attorney.

## STATEMENT OF UNDISPUTED FACTS

The relevant undisputed facts may be summarized as follows. Plaintiff is the operator of a commercial storage facility located at 815 Gillespie Street, Fayetteville, North Carolina (the "property"). (Plf's SMF (DE 89) ¶¶ 2-3).[2] In November 2014, plaintiff conveyed ownership of the property to Economy of Cumberland Self Storage, LLC, but continued to employ a manager of the property and maintains responsibility for a loan secured by the property. (Def's SMF (DE 92 ¶ 3)); (DE 80-3 at 2). At all times relevant to this action, the property was insured by defendant. (Plf's SMF (DE 89) ¶ 4).

In October 2016, Hurricane Matthew made landfall and damaged the property. (Plf's SMF (DE 89) at 5). Plaintiff submitted a repair estimate from Evans Contracting in the amount of $348,480.00. (Def's SMF (DE 92) ¶ 10). Defendant then hired an engineer, Ron Bittler, P.E. ("Bittler"), who conducted an inspection "to determine damage causation and extent of damage to the" property and "to review and comment on" the estimate by Evans Contracting. (DE 65-1 at 3). In a report dated December 1, 2016, Bittler noted some pre-existing damage and concluded that "only 5% to 10% of roof damage [could] be attributed to the storm event." (DE 80-8 at 4). Defendant paid plaintiff $75,000.00 in December 2016. (Def's SMF (DE 92) ¶ 15).[3] In February

---

[2]    Where a fact asserted in the movant's statement of material fact is undisputed, the court cites to the opposing parties' responsive statements of facts, where it indicates the fact is admitted, undisputed, or without opposing fact.

[3]    Plaintiff disputes whether this payment was in settlement of the claim, but not the fact or amount of payment.

4

2018, plaintiff hired Southeastern Home Builders of Clinton, LLP to undertake $32,500.00 in repairs to the property. (See DE 80-10 at 2; 83-7 at 23-25).

On or about September 14, 2018, Hurricane Florence damaged the property. (Def's SMF (DE 92) ¶ 24), and plaintiff submitted a claim to defendant for damages arising from that storm. (Id. ¶ 25). Defendant hired an independent adjuster, Jim Majors, who conducted an inspection, and estimated damage in the amount of $86,738.94. (Id. ¶ 26-27). Bittler undertook a second inspection, and produced another report. (Id. ¶ 30). On January 30, 2019, defendant sent plaintiff a reservation of rights letter that did not deny plaintiff's claim, but stated that there defendant had identified "several areas of concern which could . . . limit or exclude coverage." (DE 67-7 at 2). On September 4, 2019, defendant's adjuster represented that while defendant "continue[d] to handle [the] loss under a full and complete reservation of rights," he had "issued payment for . . . $85,738.94 . . . in good faith toward settlement of the loss." (DE 81-7 at 2).

In November 2019, the parties began an appraisal process set forth in the policy. Plaintiff chose Danny Partin ("Partin") as its appraiser, defendant chose Graham as its appraiser, and the two appraisers selected Gibson as umpire. (DE 98-2 at 2). After inspection, Graham expressed his opinion that "replacement is the only way to make repairs" to John Malone, counsel for defendant. (DE 71-4 at 171). Malone responded, "[p]lease do not agree to proceed with appraisal before we speak," (id.), and after Graham spoke with Malone and Wright, he completed an appraisal which recommended repairing rather than replacing the roof. (Id. at 99; DE 71-4 at 144-49). That appraisal also cites an "engineer inspection" stating the structure was "20% damaged by wind," (DE 71-4 at 144-49), but no report with this figure has surfaced.

The final appraisal award, signed by plaintiff's appraiser and the umpire, states a replacement cost of $5,643,546.15. (DE 68-1). On March 25, 2022, defendant paid plaintiff

$473,073.38, representing, in defendant's opinion, "the portion of the appraisal award that [it] determined is covered by the . . . policies," less amounts previously paid and applicable deductibles. (DE 67-9 at 2).

## COURT'S DISCUSSION

A.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).[4]

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's]

---

[4]    Throughout this order, internal citations and quotation marks are omitted unless otherwise specified.

favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.    Analysis

1.    Breach of Contract

Both parties seek summary judgment on this claim. Defendant argues that it is entitled to judgment as a matter of law, as relevant here, where 1) that part of plaintiff's breach of contract claim arising from damage sustained during Hurricane Florence is time-barred, 2) plaintiff lacked an insurable interest on the property at the time of the asserted breach, 3) plaintiff has failed to offer admissible evidence that defendant breached the contract, and 4) defendant has already paid plaintiff more than it owes.[5] Plaintiff argues that the undisputed facts show that it is "entitled to

---

[5]    Defendant also objects to certain affidavits filed by plaintiff in support of its motion for summary judgment, but the court does not rely on those affidavits because they are not determinative of either motion. (See DE 63-71).

compensatory damages in the amount of the [appraisal a]ward" and interest. (DE 72). The court addresses each argument in turn.

a. Time-Bar

As noted in the court's November 8, 2023, order, North Carolina law provides that in an action for breach of a contract insuring real property, the three-year limitations period accrues on the date of "the inception of the loss . . . when hurricane-force winds damaged plaintiff's real property.'" (Order (DE 61) at 8-9 (quoting Skyline Restoration, Inc. v. Church Mutual Insurance Co., 20 F.4th 825, 830-831 (4th Cir. 2021)); see N.C. Gen. Stat. § 1-52(12).

The parties agree that Hurricane Florence "made landfall and damaged the [] property" on "or about September 14, 2018." (Def's SMF (DE 92) ¶ 24). Plaintiff moved to amend its complaint September 16, 2022, about four years after the inception of such loss. (DE 33). Accordingly, under the reasoning of the court's November 8, 2023, order plaintiff's breach of contract claim arising from defendant's alleged failure to pay for damages sustained as a result of Hurricane Florence is time-barred.[6] (See Order (DE 61) at 8-10).

Plaintiff argues that its breach of contract claim in this part is not time-barred because on March 25, 2022, defendant paid plaintiff purportedly for losses sustained as a result of both Hurricanes Matthew and Florence in a lump sum, after deducting payments already rendered separately for each hurricane. This is a non-sequitur. Plaintiff does not cite, and the court has not found, any precedent holding that an insurer's payments after the statute of limitations has run toll the statute of limitations or change its accrual date required by N.C. Gen. Stat. § 1-52(12).

---

[6] Where no motion for judgment on the pleadings was made with respect to plaintiff's breach of contract claim, the court did not determine the breach of contract claim was time-barred in its November 8, 2023, order. However, the same analysis applying to plaintiff's bad faith claim, which was held to be time-barred, applies here.

8

Plaintiff also argues that its breach of contract claim regarding Hurricane Florence is one and the same as its breach of contract claim regarding Hurricane Matthew, where defendant's failure to pay fully for damages sustained as a result of Hurricane Matthew prevented plaintiff from repairing the property fully, exacerbating the damage sustained when Hurricane Florence later hit. As the court remarked in its November 8, 2023, order, a "continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." (DE 61 at 10) (citing Williams v. Blue Cross Blue Shield of North Carolina, 357 N.C. 170, 179 (2003)). Thus, such alleged ill effects resulting from the original failure to pay do not serve to extend the limitations period for that part of the claim regarding Hurricane Florence.

Accordingly, defendant is entitled to summary judgment on plaintiff's breach of contract claim arising from damage sustained during Hurricane Florence, and plaintiff's motion in this part is denied.

b.     Insurable Interest

Defendant argues it entitled to summary judgment based on the remaining part of plaintiff's breach of contract claim for damage arising from Hurricane Matthew based on plaintiff's lack of insurable interest in the property. The court disagrees.

North Carolina law requires that insurance coverage not be "for more than the interest of the insured." Collins v. Quincy Mut. Fire Ins. Co., 297 N.C. 680, 683 (1979) (citing N.C. Gen. Stat. § 58-44-16(f)(1)). An entity "has an insurable interest in the subject matter insured" when it derives "pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage . . . by the happening of the event insured against." King v. National Union Fire Ins. Co., 258 N.C. 432, 434-35 (1963). The policy in effect when Hurricane Matthew made landfall

9

stipulated that defendant would "not pay [plaintiff] more than [its] financial interest in the [c]overed [p]roperty." (DE 81-19 at 49).

It is undisputed that plaintiff conveyed ownership of the property to Economy of Cumberland Self Storage, LLC in November 2014, prior to Hurricane Matthew. (Def's SMF (DE 92) ¶3; DE 80-3 at 2). However, the record reflects that plaintiff is responsible for a loan owed to Cape Fear Farm Credit and secured by the property. (See Def's SMF (DE 92) ¶¶ 46-47). In addition, plaintiff employed a manager, Dawn Fedders ("Fedders") who performed a variety of important tasks, including collecting rent from tenants. (DE 80-5 at 23-24).[7] Making "all justifiable inferences" in plaintiff's favor, as the court is required to do when considering defendant's argument in favor of summary judgment, the court cannot conclude as a matter of law that plaintiff lacked any insurable interest in the property. Anderson, 477 U.S. at 247.

Therefore, defendant's motion is denied in this part as to this issue.

c.    Liability

Under North Carolina law, "[t]he elements of a claim for breach of contract are 1) existence of a valid contract and 2) breach of the terms of the contract." Wells Fargo Ins. Servs. USA, Inc. v. Link, 372 N.C. 260, 276 (2019). The "interpretation of an insurance policy is a question of law" for the court.[8] State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co. of Am., 343 F.3d 249,

---

[7]    For purposes of the instant analysis, the court does not consider plaintiff's assertions in its response brief that it maintained possession of and had an office at the property, routed expenses and revenue through its own bank account, and "ran the warehouse business conducted at the property," (Plf's Resp. (DE 94) at 9), where defendant objects to their consideration on the basis that these assertions were not disclosed during the discovery period and where resolution of this objection is not necessary for ruling on the instant motions. The court also does not consider determinative the fact that plaintiff paid the premiums on the policy, where applying this exception would swallow North Carolina's requirement that coverage not exceed the insured's interest in the property, nor the fact that plaintiff made repairs, where this conduct occurred after the date of the loss.

[8]    The parties do not dispute North Carolina law applies here. Further, North Carolina choice of law is applicable, see Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, (1941), and guides application of North Carolina substantive law, Fortune Ins. Co. v. Owens, 351 N.C. 424, 428 (2000), and North Carolina statutory law, N.C. Gen. Stat. § 58-3-1.

254 (4th Cir. 2003); <u>Accardi v. Hartford Underwriters Ins. Co.</u>, 373 N.C. 292, 295 (2020). "As with all contracts, the object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." <u>Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.</u>, 364 N.C. 1, 9 (2010). "When the policy language is clear and unambiguous, a court is required to enforce the policy as written." <u>Cont'l Cas. Co. v. Amerisure Ins. Co.</u>, 886 F.3d 366, 371 (4th Cir. 2018). "Terms defined in insurance policies are applied to all clauses of the insurance contract, while undefined terms are construed in accordance with their ordinary meaning." <u>Id.</u>

However, "ambiguities in the terms of an insurance policy must be construed against the insurer and in favor of coverage." <u>N.C. Farm Bureau Mut. Ins. Co., Inc. v. Martin ex rel. Martin</u>, 376 N.C. 280, 286 (2020) (explaining that "this rule of construction is only triggered when a provision in an insurance agreement is ambiguous"). Accordingly, "[w]hen the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved . . . in favor of coverage." <u>Cont'l Cas.</u>, 886 F.3d at 371.

Under North Carolina law, "the sources of liability which are excluded from [property] coverage must be the sole cause of the injury in order to exclude coverage under the policy." <u>State Capital Ins. Co. v. Nationwide Mut. Ins. Co.</u>, 318 N.C. 534, 546 (1986); <u>see, e.g.</u>, <u>Erie Ins. Exchange v. Bledsoe</u>, 141 N.C. App. 331, 338 (2000) (recognizing that a homeowner's recovery would not be barred by a clause excluding recovery for "settling which is so severe that it suddenly and material impairs the structure of a building" unless such settling was the only cause of damage to the home).

Here, neither party is entitled to summary judgment on plaintiff's contract claim arising from Hurricane Matthew where there are disputed issues of material fact bearing on the amount of

damage, if any, the hurricane inflicted. The building and personal property coverage form of the policy in effect when Hurricane Matthew made landfall provides in pertinent part,

> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(DE 81-19 at 40). The "Causes of Loss – Special Form" provision provides in pertinent part,

> A. Covered Causes of Loss
> When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:
>
> 1.    Excluded in Section B., Exclusions; or
> 2.    Limited in Section C., Limitations; that follow.

(Id. at 67). Reading these sections of the policy together, defendant agreed to pay for direct physical loss of or damage to the property from all causes except those specifically excluded or limited.

Sections B(2)(d)(1)-(2) of the "Causes of Loss – Special Form" provision, titled "Exclusions," provides in pertinent part that defendant "will not pay for loss or damage caused by or resulting from . . . wear and tear; rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in [the] property that causes it to damage or destroy itself." (Id. at 68).[9] Construing this provision in accordance with North Carolina law, defendant is not required to pay for any damage resulting solely from the above-stated causes. See State Capital Ins. Co. 318 N.C. at 546. While damage to the property caused solely by wear and tear or other causes named in section B(2)(d)(1)-(2) is not covered under the policy, defendant is required to pay for storm

---

[9]      The court has considered that part of section B(2) which reads, "if an excluded cause of loss that is listed in [B](2)(d)(1) through (7) results in a 'specified cause of loss' . . . [defendant] will pay for the loss or damage caused by that 'specified cause of loss[.]'" (Id. at 69) (emphasis added), and the definition of "Specified Causes of Loss," (id.) which includes "windstorm or hail." (Id. at 74). However, these provisions do not affect the analysis where any defects in the property could not have caused Hurricane Matthew itself, but only contributed to damage the property sustained during that storm.

Case 5:19-cv-00529-FL   Document 98   Filed 09/24/24   Page 12 of 35

damage exacerbated by those causes. In short, defendant must pay for 1) pure storm damage and 2) storm damage exacerbated by B(2)(d)(1)-(2) causes, but not 3) B(2)(d)(1)-(2) damage that pre-existed the storms.

Plaintiff has produced evidence suggesting the property sustained storm damage from Hurricane Matthew in the amount of $368,480.00. (DE 66-3 at 2). However, defendant paid only $75,000.00 specifically in "compromise" of the claim arising from Hurricane Matthew. (Def's SMF (DE 92) ¶ 15; DE 80-9 at 2).[10] Plaintiff therefore has demonstrated at least a genuine issue of fact that it sustained "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss," and that defendant did not "pay for" such loss, thus breaching the policy. (DE 81-19 at 40). Accordingly, defendant's motion for summary judgment as to the breach of contract claim must be denied.

At the same time, plaintiff has not demonstrated that it is entitled to judgment as a matter of law on its breach of contract claim, because disputed issues of material fact exist as to whether and how much damage pre-existed the storms. (See DE 92 ¶¶ 13, 32). Bittler, who inspected the property and authored a report on behalf of defendant following Hurricane Matthew, observed that the "building and roof system [were] not watertight prior to the storm event," (DE 80-8 at 3), that "some gutter damage pre-existed the storm event," (id. at 5), that "timber deterioration and displacement of the timber furring nailing plate atop the roof purlins [made] the metal roof panels more susceptible to wind related damages," (id.), and that "[s]ome roof panels had corroded." (Id.). Bittler concluded that "only 5% to 10% of the roof damage [could] be attributed to" Hurricane Matthew. (Id. at 4). However, it is not clear from the report whether this figure is meant

---

[10] Defendant also paid plaintiff $473,073.38 in March 2022, (see DE 67-9 at 2), but plaintiff argues that this payment related at least in part to Hurricane Florence and is also an underpayment when compared with the cost of $5,643,546.15 to restore the property after both storms, as calculated by Gibson. (DE 68-1 at 2).

to describe the damage attributable solely to Hurricane Matthew, which would be an incorrect measure of plaintiff's insurance coverage, or whether Bittler was estimating the combined effect of the storm and any B(2)(d)(1)-(2) causes.[11]  Bittler also conducted an inspection after Hurricane Florence.  (DE 65 ¶ 4).  After that inspection, Long, defendant's adjuster, asked Bittler's firm:

> [C]an the locations for each type of damage referenced in the report be specified for each building, i.e. recent wind damage from Florence as opposed to wind damage from Matthew as opposed to <u>any other pre-existing maintenance, aging, long term deterioration etc.</u>? . . . To clarify, can Mr. Bittler provide a sketch of each building with annotations on the sketch to identify the general and/or precise area(s) of damage including a description of the type of damage within each annotation?

(DE 65-3 at 3) (emphasis added).  Bittler responded that he did "not have the required level of detail from [the] previous two field inspections that would be necessary to provide" this information.  (<u>Id.</u> at 2).

It is not clear whether plaintiff accedes that any damage to the property pre-existed the storms.  (See DE 92 ¶ 13) (responding to defendant's contention that "Bittler's December 1, 2016[,] report states that the Evans roof repair proposal addressed . . . pre-existing damaged areas" with "the Bittler report speaks for itself"); (DE 94 at 6) (analyzing "non-excluded concurrent cause[s]" of loss, which the court has held to be covered, without addressing excluded pre-existing loss, which is not).  In any event, the evidence on the extent of damage sustained to the building during Hurricane Matthew is susceptible to many reasonable inferences.  <u>See, e.g.,</u> (DE 65-1 at 4) ("[O]nly 5% to 10% of the roof damage can be attributed to the subject storm event.") (DE 81-12) (testimony by Baer stating, "[w]hen I was there I saw a lot of maintenance that had been performed, . . . [s]o I'm not sure what maintenance [Bittler is] expecting and what he is seeing that he says it hasn't been maintained."); (DE 71-8 at 60) (testimony of Hamrick that defendant could not, from

---

[11]    Because Bittler was not deposed, he was never asked to clarify the 5-10% figure.

photographs, "differentiate due to the condition of the property"); (DE 66 ¶ 4) (testimony by Brown that plaintiff "obtained an estimate for the damage <u>from Hurricane Matthew</u> from Evans Contracting . . . in the amount of $368,480[.00]") (emphasis added); (DE 66-3 at 2) (Evans Contracting estimate); (DE 80-10 at 2) (invoice for $32,500.00 for the repairs undertaken by Correia in February 2018); (DE 83-7 at 23-25) (testimony by Correia that he "fix[ed] what[ was] damaged," describing repairs undertaken over the course of about a week). Accordingly, summary judgment on this part of the claim pertaining to Hurricane Matthew is not available to either party.[12]

    3.    Fraud

Under North Carolina law, "[t]he essential elements of fraud are: 1) false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, 5) resulting in damage to the injured party." <u>Rowan County Board of Education v. Gypsum Co.</u>, 332 N.C. 1, 17 (1992). In addition to these five elements, "any reliance on the allegedly false representations must be reasonable." <u>Forbis v. Neal</u>, 361 N.C. 519, 527 (2007). "The mere failure to carry out a promise in contract . . does not support a tort action for fraud." <u>Strum v. Exxon Co.</u>, 15 F.3d 327, 331 (4th Cir. 1994).

Neither party is entitled to summary judgment on plaintiff's claim for fraud where there are disputed issues of material fact as to whether any misrepresentation or concealment of material facts were reasonably calculated or made with intent to deceive plaintiff.

---

[12]    Defendant points in addition to a section of the policy limiting its liability to a maximum of $50,000.00 for loss in value of undamaged portions of the property resulting from laws requiring demolition of parts of the same property. (<u>See</u> DE 74; 81-19 at 79). Where this section is offered in response to plaintiff's expert testimony concerning damages sustained as a result of Hurricane Florence, (<u>see</u> DE 195-200), and that claim is time barred, the court does not consider this section

As an initial matter, plaintiff has presented sufficient evidence to demonstrate a genuine issue of fact as to each element. First, with respect to a false representation, plaintiff contends that defendant "communicated with its appraiser," after which defendant's appraiser switched positions. (Pl's Mem. (DE 72) at 22). In particular, defendant's appraiser, Graham, expressed his opinion in an email that, "the roof and siding [were] such that replacement is the only way to make repairs." (DE 71-4 at 168). Fourteen minutes later, defendant's attorney in this matter, Malone, responded, "please do not agree to proceed with the appraisal before we speak." (DE 71-4 at 171). Graham, Malone, and Wright spoke by telephone for twenty-five minutes, (id. at 98), after which Graham completed an appraisal which recommended repairing rather than replacing the roof. (Id. at 99); (DE 71-4 at 144-49). Graham's final appraisal cites an "engineer inspection" stating the structure was "20% damaged by wind,"[13] (DE 71-4 at 144-49); however, Graham was not able to recall what report he looked to for this number, and no engineer's report claiming 20% wind damage has surfaced in this matter. (DE 71-4 at 39-40). Graham's representation that he relied on an engineer's report claiming 20% wind damage thus plausibly could be inferred to be a false representation, in service of concealment of a material fact, Graham's actual opinion that the structure could only be repaired by replacing the roof and siding.

Next, the fact that a phone call with defendant's counsel and claim examiner was scheduled minutes after Graham expressed an opinion unfavorable to defendant is susceptible both to an inference that the misrepresentation and concealment was reasonably calculated and made with intent to deceive.

Next, an inference of actual deception and injury is created by the use to which the appraisal was put. The appraisal provision of the policy requires each party to "select a competent and

---

[13]     Though not directly stated in plaintiff's brief, this statement presumably is the false representation on which plaintiff seeks to rely.

impartial appraiser," and the two appraisers "select an umpire." (DE 81-14 at 47). The appraisers were to "state separately the value of the property and the amount of loss," and to "submit their differences to the umpire" only if they disagreed. (See id.) (see also DE 90-7) (testimony that "nobody ever" contacts an umpire when the parties' appraisers settle the case). Thus, it is a plausible inference that Gibson, the umpire, was deceived by the report incorporating the 20% wind damage statement, (see DE 90-7 at 68) ("What impacted me in this case is the estimates written by the two appraisers and the engineering reports, Forte and Summit"),[14] and to the extent that defendant's and disagreement between the appraisers resulted in more work for Gibson, the umpire, who expressed cost concerns throughout his testimony, see, e.g. (DE 90-7 at 78) ("If I had written an estimate on this, the bill would have been astronomical"), and hired his own engineer to create a report. (Id. at 81-83).

In sum, the foregoing evidence is sufficient to support an inference of fraud. Defendant, thus, is not entitled to summary judgment on this claim.

Defendant argues that summary judgment in its favor is warranted based upon testimony by Wright, who participated in the phone call through which plaintiff alleges defendant exerted improper influence on the process. However, Wright never testified with specificity about a phone call with Malone and Graham. He said only,

> I don't remember. I know the appraisal took forever and, you know, on our side we were getting a little anxious as to why it was taking so long. But I don't really – I seem to recall at some late point in the process there was a conversation with the appraiser and it had to do with, "What's taking so long?" But other than that, I don't really remember having – you know, it's kind of like, "I'm going to let this thing, the appraisal, run its course and wait for a final decision."

---

[14] To the extent that defendant's $473,073.38 payment to plaintiff incorporates the 20% wind damage figure and Graham's appraisal, additional evidence may exist that plaintiff has in fact been deceived by this statement and by asserted concealment of Graham's true opinions.

(DE 81-18 at 31). Based on the court's review of other evidence in the case, it is unlikely this passage, which emphasizes Wright's concern with delay, references the phone call with which plaintiff is concerned, given Malone's earlier instruction to Graham not to proceed. (See DE 71-4 at 171). Thus, there are disputed issues of material fact as to whether defendant falsely represented or concealed material facts and whether defendant intended to deceive plaintiff. Accordingly, defendant's motion for summary judgment on this issue is denied.

At the same time, none of plaintiff's arguments as to why summary judgment should be granted in its favor on this issue are convincing. Plaintiff claims that defendant "represented that it would fairly participate in the . . . appraisal process . . . when it did not intend to do so," and points to several supporting allegations for this fraud charge. (Pl's Mem. (DE 72) at 22). First, plaintiff states in conclusory fashion, and without citing to record evidence, that defendant "had no intent to honor the [appraisal a]ward." (Id.). This contention is insufficient to demonstrate a genuine issue of fact. Celotex Corp., 477 U.S. at 323.

Second, plaintiff argues that the series of events examined above entitles it to summary judgment on this issue. However, this series of events is compatible both with an intent to mislead plaintiff and with simple oversight or error by defendant in the course of a complex appraisal. In addition, there is also evidence suggesting that misrepresentations or concealments ultimately were not relied upon by Gibson. (DE 90-7) (agreeing with the statement "[y]ou picked one ([plaintiff's]) estimate over the other"). Accordingly, a genuine issue of material fact exists as to whether defendant intended to deceive plaintiff on the basis of its instructions to its appraiser, Graham's alleged concealment of his true opinions, and the 20% damage figure. As the court explains below, none of plaintiff's arguments for summary judgment in its favor on this issue are convincing.

18

Third, plaintiff contends that defendant "rejected the [a]ward conclusion, buttressed by the Baer independent engineering report, that the cause of loss for the award was wind, a covered cause of loss." (Pl's Mem. (DE 72) at 22). The court is unable to discern any misrepresentation, concealment, or detrimental reliance in this charge, which sounds simply as a rephrasing of plaintiff's time-barred breach of contract claim arising out of Hurricane Florence.

Fourth, plaintiff posits that defendant "stated that the appraisal panel should not address covered v. excluded causes of loss when it knew its appraiser had done just that[.]" (Id. at 22). Again, plaintiff includes no citation to the record, or even alleged speaker, for this statement, and a statement fitting this description did not surface from the court's review of the record. This contention thus is insufficient to demonstrate a genuine issue of fact. Celotex Corp., 477 U.S. at 323.

Fifth and finally, plaintiff contends that defendant's rejection of the appraisal award, with reference to "the debunked Graham appraisal . . . [and] a non-existent 20% wind cause formula" supports summary judgment in its favor. (Pl's Mem. (DE 72) at 22). This is simply a rephrasing of the second contention examined above, and fails for the same reasons to provide a basis for summary judgment in favor of plaintiff.

Accordingly, both parties' motions for summary judgment are denied in that part pertaining to plaintiff's fraud claim.

4. UDTPA

Insurance law in North Carolina is governed by North Carolina General Statute § 58-63-15, which defines "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance" to include the following enumerated "unfair claim settlement practices," as pertinent here:

19

a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;

e. Failing to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled; . . .

j. Making claims payments to insureds or beneficiaries not accompanied by [a] statement setting forth the coverage under which the payments are being made;

k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration; . . . .

m. Failing to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage; and

n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

N.C. Gen. Stat. § 58-63-15(11).

"[T]he acts proscribed in [N.C. Gen. Stat.] § 58–63–15(11) were designed to protect the consuming public" based on the determination that the specified conduct is "inherently unfair, unscrupulous, immoral, and injurious to consumers." Gray v. N.C. Ins. Underwriting Ass'n, 352

N.C. 61, 70-71 (2000). More generally, § 75-1.1(a) declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Gray, 352 N.C. at 68. "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001).

In considering the intersection between North Carolina General Statute § 75-1.1 and § 58-63-15(11), the Fourth Circuit has explained as follows:

> North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, prohibits unfair and deceptive acts or practices, generally, and North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), defines unfair practices in the settlement of insurance claims. As relevant here, § 75-1.1 provides a private cause of action for violations, whereas § 58-63-15(11) does not; instead "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C.App. 231, 563 S.E.2d 269, 278 (2002) (internal quotation marks omitted). Thus, an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11). See Gray[, 352 N.C. at 61] (2000).

Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018). Unlike with allegations of common law bad faith, good faith is not a defense to an alleged violation of N.C. Gen. Stat. § 58-63-15(11). See Gray, 352 N.C. at 68 ("Good faith is not a defense to an alleged violation of [N.C. Gen. Stat.] § 75–1.1.").

Plaintiff's complaint[15] references claims for violation of North Carolina General Statute §§ 58-63-15(11)(a), (b), (c), (d), (e), (f), (g), (h), (j), (m), and (n). Plaintiff contends in its motion

---

[15] All references to the complaint ("compl.") are to the amended complaint at DE 52.

21

it is entitled to summary judgment on its UDTPA claim, but it omits mention of subparagraphs (b), (e), and (m), and adds address of subparagraph (k). Defendant moves for summary judgment on all subparagraphs cited in the complaint. The court addresses them in turn below.

       a.     § 58-63-15(11)(a)

Subparagraph (a) prohibits "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." Both parties move for summary judgment as to this subparagraph, with defendant contending that there is no evidence that it "misrepresent[ed] pertinent facts or insurance policy provisions relating to coverages at issue" and plaintiff stating that "Wright misrepresented that [plaintiff] bore and continues to bear the burden of establishing what portion of damage found at the [p]roperty was based on an excluded cause of loss." (DE 72 at 23; 94 at 18).

As the court has discussed with respect to plaintiff's fraud claim, plaintiff has demonstrated a genuine issue of fact that defendant falsely represented or concealed material facts by concealing its appraiser's opinion regarding replacement of the roof and siding and incorporating a 20% wind damage figure not supported by evidence. See supra § B(3). These misrepresentations constitute pertinent facts relating to coverages at issue, thus, plaintiff has demonstrated the existence of an issue of material fact regarding this claim.

However, plaintiff fails to point to any specific policy provisions it claims defendant misrepresented, either in support of its own motion or in response to defendant's motion. While plaintiff contends that Wright misrepresented the policy, plaintiff has not directed the court's attention to any specific examples of such alleged misrepresentation, and the court has not found any in the record. In the absence of any specific mention of policy provisions claimed to have been misrepresented, plaintiff has not demonstrated an issue of fact on this prong of subparagraph

22

(a).  In addition, plaintiff has not shown an absence of disputed issues of material fact regarding defendant's alleged misrepresentations of pertinent facts.  Accordingly, both parties' motions are denied with respect to subparagraph (a).

        b.        § 58-63-15(11)(b)

Defendant moves for summary judgment on this subparagraph.  Plaintiff neither moves for summary judgment on this subparagraph nor responds to defendant's arguments on this score.

Subparagraph (b) prohibits "[f]ailing to acknowledge and act reasonably promptly upon communications" relating to a claim under an insurance policy as an unfair claim settlement practice.  Defendant has produced a series of emails showing defendant timely attempted to communicate with plaintiff and its public adjuster, and often did not hear back for weeks.  <u>See, e.g.</u>, (DE 80-20) (indicating that defendant did not receive a response to its reservation of rights letter); (DE 81-1 at 2) ("We have yet to receive a response form the insured to our reservation of rights letter or contact from his public adjuster on this loss.  Do you have any new information?"); (DE 81-4) (rejecting plaintiff's estimate the day after receipt).  Plaintiff has not addressed this evidence or acknowledged that its complaint includes a claim under this subparagraph.

As such, on the present record, defendant has demonstrated there is no genuine issue of material fact as to its liability under this subparagraph.  Accordingly, defendant's motion is granted in this part.

        c.        § 58-63-15(11)(c)

Subparagraph (c) deems it unlawful to "[f]ail[] to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies," N.C. Gen. Stat. § 58-63-15(11)(c).

23

Plaintiff has presented sufficient evidence to establish a genuine issue of material fact regarding the adequacy of defendant's standards for investigation of claims. Long, defendant's adjuster, testified that defendant had "a manual that" that general adjuster team "used for reviewing files," (DE 71-5 at 5), but there were no manuals that were specific to Long's position as a general adjuster. (id. at 6). In addition, Long could not testify to the existence of any "instructions or training," (id. at 8), on creating claims journal entries, testified that "no training was provided to him" where he had almost 20 years' experience upon his hiring and was required by the State of North Carolina to take continuing education courses. (Id. at 4). Wright, who later handled plaintiff's claim, testified that he was not aware of any internal written policies that applied to what he did. (DE 71-6 at 25). When asked whether he received "any sort of formal training," Wright testified,

> No, most of what – the fundamentals of claim handling obviously, I already knew when I came to work at Penn National, so that wasn't necessary. The uniqueness of what I currently do, that would just be handled as matters came up. And I would talk to my boss at the time, Tom Kline, and he would say, "This is - - this is why we want to do it this way or that way," and, okay, that's the way we did it."

(Id. at 24-25). Viewing this evidence in the light most favorable to plaintiff, defendant's motion with respect to this part of plaintiff's claim must be denied.

However, plaintiff has not demonstrated an absence of material fact showing liability on this issue. Plaintiff relies upon the affidavit of Dinsmore, its expert witness in insurance claims handling. Dinsmore states that defendant

> failed to adopt and implement any reasonable standards for the investigation of commercial property insurance claims such as [plaintiff's] claim. [Defendant] has commercial insurance underwriting manuals . . . but has absolutely no commercial property insurance claim manuals, guidelines, or instructions.

(DE 67 ¶ d). While such oversight weighs in favor of liability, plaintiff has not cited, and the court has not found, any case holding that a lack of written manuals, guidelines, or instructions

24

constitutes a failure to adopt "reasonable standards" as a matter of law under N.C. Gen. Stat. § 58-63-15(11)(c). Further, the question of reasonableness of defendant's standards is susceptible to competing inferences for determination by the factfinder. See, e.g., Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 350 N.C. 214, 225 (1999) ("Ordinarily, the question of whether an actor is reasonable in relying on the representations of another is a matter for the finder of fact.").

Defendant, for its part, points to a series of emails purporting to show that "Eric Long engaged engineers to assess the damage to the building, requested information from the insured's public adjuster, and ultimately paid in full the amount that he could substantiate with his investigation." (DE 74 at 17). Long's handling of plaintiff's individual claims is not determinative of whether the broader standards adopted by defendant were reasonable. There thus remain material disputes of fact as to the reasonableness of defendant's standards for investigating promptly claims arising under its policies. Accordingly, both parties' motions are denied with respect to this subparagraph.

> d.    § 58-63-15(11)(d)

This subparagraph deems it unlawful to "refus[e] to pay claims without conducting a reasonable investigation based on all available information." § 58-63-15(11)(d). Plaintiff has submitted evidence showing that defendant paid only $85,738.94, (DE 81-7 at 2), before plaintiff requested appraisal, even though the appraised replacement cost of the structure eventually was calculated to be $5,643,546.15. (DE 68-1 at 2). Even after the award issued, defendant paid only $473,073.38, (DE 67-9 at 2), which suggests that defendant did not properly recognize all available information regarding the state of the structure or the cost to replace it.

Plaintiff simply repeats its allegations that defendant refused to make additional payments "without explanation or reasonable investigation," (DE 72 at 24), and defendant relies on the same

emails referenced in the previous section. Both these showings are insufficient to show an absence of material fact. Accordingly, both parties' motions are denied with respect to this subparagraph.[16]

        e.        § 58-63-15(11)(e)

Subparagraph (e) makes it an unfair and deceptive trade practice for insurance companies to "[f]ail[] to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed." N.C. Gen. Stat. § 58-63-15(11)(e). Defendant has shown that this subparagraph is inapplicable to this case where no proof of loss statement was submitted by plaintiff or requested by defendant. Plaintiff does not address this showing in its response brief, and the court has not found in its own review of the record any evidence of a proof of loss statement bearing on the case. In addition and in the alternative, defendant disputed liability under the policies up through and including the instant motion before the court, and plaintiff does not point to evidence showing an unreasonable delay between any proof-of-loss statement and any denial of coverage. Accordingly, defendant's motion is granted on this basis with respect to subparagraph (e).

        f.        § 58-63-15(11)(f), (g), (h), and (m)

Subparagraphs (f), (g), (h), and (m) all govern an insurer's conduct once liability under the governing policy is either reasonably clear or not disputed. Plaintiff's claims under these subparagraphs accordingly fail where it has not introduced evidence showing that liability is reasonably clear.

---

[16] The parties are reminded that plaintiff's claim for violation of this subparagraph arising from any failure reasonably to investigate the damage arising from Hurricane Matthew is time barred under the terms of the court's November 8, 2023, order. (DE 61 at 6).

Subparagraph (f) states that it is an unfair claim settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C. Gen. Stat. § 58-63-15(11)(f). A violation of this subparagraph generally requires the insurer to refuse to pay or settle when objective or outside forces demonstrate liability, not when the parties reasonably dispute coverage. See, e.g., Elliot, 88 F.3d at 398 (liability became reasonably clear when jury returned verdict on fault in underlying events); Gray, 352 N.C. at 63-64, 72-74 (liability under statute when insurer ignored its own adjuster's figures and conclusions); Luther v. Seawell, 191 N.C. App. 139, 144-45 (2008) (no liability under statute when insurer made genuine argument on coverage). Liability is not "reasonably clear" if a genuine dispute on liability or coverage exists, and advocating a coverage position that ultimately proves incorrect does not violate this subparagraph. See Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 234 (4th Cir. 2001).

Plaintiff argues that liability became clear either when "Bitttler opined that the roof needed replacing and the damages could not be segregated" or "in February 2022[,] upon issuance of the [appraisal] award." (DE 94 at 19). However, Bittler did not state the cost to repair the structure in either of his reports, making it impossible that liability was established by those reports. (See DE 65-1; 65-2). Second, the undisputed facts show that liability was contested up through and including the time of appraisal, when defendant issued to plaintiff its final payment based on its appraiser's assessment and its own coverage positions, which do not accord with plaintiff's positions. (DE 92 ¶ 80). Plaintiff purports to deny defendant's statement that its "decision to pay the part of the appraisal award that was covered by the policy was based in part on receipt of Craig Graham's report," (id.), however, its denial describes a process by which defendant's decisionmaker relied uncritically on Graham's report, disputing only the "in part" portion of

defendant's statement.  (Id.) ("The only document Wright reviewed in making his decision was Graham's report).  Thus, when viewed in the light most favorable to plaintiff, defendant relied on its own appraisers and decisionmakers, distinguishing this case from instances in which the insurer was found to have violated subparagraph (f).  See Gray, 352 N.C. at 63-64, 72-74.  Finally, the fact that plaintiff has not proposed a definite timeframe as to when liability became clear militates against any conclusion that defendant violated subparagraph (f).  Accordingly, defendant's motion is granted with respect to subparagraph (f).

Section 58-63-15(11)(g) prohibits "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g).  As no amount is "due" until liability is determined, typically this subparagraph "require[s] that the coverage issue be determined in favor of the insured."  Elliott, 883 F.3d at 398.  The subparagraph by its terms additionally requires that the insurer offer "substantially less than the amounts ultimately recovered" by the insured before there is a violation.  N.C. Gen. Stat. § 58-63-15(11)(g).  Here, where liability has not been determined, suit under this subparagraph is premature.  Thus, the court finds as a matter of law that defendant did not violate subparagraph (g).

Subparagraph 58-63-15(11)(h) prohibits "[a]ttempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled."  N.C. Gen. Stat. § 58-63-15(11)(h).  When liability has not yet been determined, it cannot be said that a reasonable person would believe himself entitled to either the maximum coverage provided under the policy, or some amount ultimately recovered.  Elliott, 883 F.3d at 99 ("The mere fact of having [] coverage does not entitle the insured to recover at all.").  Thus, as a matter of law defendant did not violate

subparagraph (h) by making settlement offers for less than the entire amount claimed by plaintiff The court accordingly grants defendant's motion for summary judgment as to this subparagraph.

Plaintiff's claim under subparagraph (m), prohibiting "[f]ail[ure] to promptly settle claims where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage," fails for the reasons described above. It also fails where plaintiff does not mention this subsection in its brief in support of its motion for summary judgment or in opposition to defendant's motion.

Accordingly, with respect to subparagraphs (f), (g), (h), and (m), defendant's motion is granted and plaintiff's motion is denied.

g.      § 58-63-15(11)(j) and (n)

Subparagraphs (j) and (n) govern an insurer's duty to explain its decisions. In particular, subparagraph (j) prohibits "making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which the payments are being made." § 58-63-15(11)(j). Subparagraph (n) prohibits "[f]ailing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." § 58-63-15(11)(n).

As an initial matter, defendant's motion for summary judgment as to plaintiff's claims under subparagraphs (j) and (n) must be denied where defendant has not pointed to any instance in which it communicated to plaintiff the specific policy provisions under which it was denying the full amount of plaintiff's claim for damages related to Hurricane Florence.[17]

---

[17]      The court acknowledges that defendant cited specific policy provisions in its October 24, 2016, letter mistakenly denying plaintiff's claim for damages sustained as a result of Hurricane Matthew, (see DE 66-2), but plaintiff's claim for violation of the UDTPA based on Hurricane Matthew was dismissed as time-barred under the terms of the court's November 8, 2023, order.

29

Evidence pertinent to this claim is susceptible to multiple interpretations, precluding summary judgment. On March 25, 2022, defendant sent plaintiff a payment of $473,073.38, which it claimed "represent[ed] the portion of the appraisal award that [defendant] ha[d] determined is covered by the . . . policies issued to" plaintiff. (DE 67-9 at 2). Defendant also referenced "amounts previously paid to" plaintiff and "any applicable deductible." (Id.).

Defendant had sent to plaintiff on January 30, 2019, a letter acknowledging receipt of plaintiff's claim arising out of damages sustained as a result of Hurricane Florence. (See DE 67-7 at 2). That letter explained that defendant had identified "several areas of concern which could . . . limit or exclude coverage," and stated that "there are questions as to whether" defendant was obligated to pay for the loss "as the cause of damage is yet to be determined and verified." (Id. at 3). Emails from Long, its adjuster, also advised that plaintiff was required "to identify the damage specifically from Hurricane Florence." (DE 81-9 at 2) (see also DE 81-7 at 2). While defendant's concerns with pre-existing damage are referenced throughout the parties' correspondence, defendant has not cited, and the court has not found, any instance in which defendant explained those concerns in terms of the actual policy language applicable to damage arising from Hurricane Florence.

As such, the court cannot determine as a matter of law that defendant's communications adequately comprise "a statement setting forth the coverage under which the payments are being made," § 58-63-15(11)(j), when put in the context of the parties' long history of dealing. Likewise, the parties' extensive correspondence shows consistent disagreement about whether and to what extent the property had been damaged before the storms, and if it had been damaged, whether defendant was obligated to pay for the portion of the loss stemming from such damage. Accordingly, genuine issues of material fact preclude a determination whether or not defendant

30

"[f]ail[ed] to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement." § 58-63-15(11)(n).

Plaintiff relies on DENC, LLC v. Philadelphia Indemnity Insurance Co., in which the insurer "first grant[ed] coverage and then den[ied] it in a confusing letter," enumerating many provisions, including some that "were not even part of the policy," but not explaining which barred coverage. 32 F.4th 38, 50 (4th Cir. 2022). Here, however, it is not clear from the evidence presented to this point whether defendant's communications "had the capacity to mislead," id., where there was no change in position, and where plaintiff arguably was on notice from its experience with Hurricane Matthew that defendant held the view that it was not obligated to pay for pre-existing damages. Cf. Martin v. Nautilus Insurance Co., 629 F. Supp. 3d 333, 342 (M.D.N.C. 2022) (denying insurer's motion to dismiss a claim under subparagraph (n) where the insurer denied the insured's claim in letters that acknowledged the insured's fire loss but relied on policy language related to a theft loss).

Accordingly, both parties' motions are denied with respect to subparagraphs (j) and (n).

        h.       § 58-63-15(11)(k)

This subparagraph, which is not cited in the complaint, prohibits "[m]aking known to insureds . . . a policy of appealing from arbitration awards in favor of insureds . . . for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." N.C. Gen. Stat. § 58-63-15(11)(k). To the extent that plaintiff is attempting to amend its complaint by brief in support of its summary judgment motion, this is improper. See Fed. R. Civ. Proc. 15(a)(2) (requiring leave of court or the opposing party's written consent once the window for amending a complaint as a matter of course has closed); (DE 55) (Court's March 2,

31

2023, order requiring any motion for leave to amend the pleadings to be filed by September 1, 2023). Even overlooking this basic issue, plaintiff has not alleged or presented evidence suggesting that defendant made known to plaintiff a policy of appealing from arbitration awards, as opposed to rejecting an arbitration award in this single instance. Accordingly, plaintiff's motion for summary judgment as to this subparagraph is denied, as is any motion to amend the complaint to include a claim under this subparagraph, and no claim under this subparagraph may be brought.

**CONCLUSION**

Based on the foregoing:

1. Plaintiff's motion for summary judgment (DE 62) is DENIED;

2. Defendant's motion (DE 73) is DENIED with respect to plaintiff's claim for breach of contract arising from defendant's failure to pay for damages sustained as a result of Hurricane Matthew;

3. It is GRANTED with respect to plaintiff's claim for breach of contract arising from defendant's failure to pay for damages sustained as a result of Hurricane Florence;

4. Defendant's motion is DENIED with respect to plaintiff's claim for fraud under North Carolina common law;

5. It is GRANTED with respect to plaintiff's claims for violations of N.C. Gen. Stat. §58-63-15(11) (b), (e), (f), (g), (h), (k) and (m); and

6. Defendant's motion is DENIED with respect to plaintiff's claims for violation of subparagraphs (a), (c), (d), (j), and (n) of that statute.

Where additional claims remain for trial in accordance with case management order as amended March 2, 2023, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file

within **21 days** from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trial, if any; and 3) at least three suggested alternative trial dates. In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or other additional alternative dispute resolution procedure in advance of trial, and if so the date for completion of such. Specify in the report if conference with the court is requested in advance of its entry of that scheduling order to follow.

SO ORDERED, this the 24th day of September, 2024.

LOUISE W. FLANAGAN
United States District Judge

# APPENDIX

# Index of Names

<u>Persons Affiliated with Plaintiff</u>
Donald L. Dinsmore ("Dinsmore") – Plaintiff's expert witness
James Smith, Sr. ("Smith") – Co-owner
Ricky Hall ("Hall") – Co-owner
Jeffrey Raines ("Raines") – public adjuster
Kevin Correia ("Correia") – performed repairs for plaintiff
Dawn Fedders ("Fedders") – manager

<u>Persons Affiliated with Defendant</u>
Eric Long ("Long") – adjuster
Dereck L. Rabun, P.E. ("Rabun") – engineer hired by Long
Ron Bittler, P.E. ("Bittler") – engineer hired by Long
Bill Hamrick ("Hamrick") – property claims manager
John Malone ("Malone") – counsel for defendant
Boyd Wright ("Wright") – claim examiner
Jim Majors ("Majors") – independent adjuster

<u>Appraisers and Related</u>
Michael M. Gibson ("Gibson") – umpire
Neil L. Baer, P.E. ("Baer") – independent engineer hired by Gibson
Danny Partin ("Partin") – plaintiff's appraiser
Craig Graham ("Graham") – defendant's appraiser

<u>Other Entities</u>
Southeastern Home Builders of Clinton, LLP – hired by plaintiff to perform repairs
Economy of Cumberland Self Storage, LLC – entity to which plaintiff conveyed ownership of the property in November 2014
Evans Contracting – provided plaintiff a repair estimate
Cape Fear Farm Credit – holder of loan secured by the property